IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

SCOTT FISHER, As Guardian of §
Jackson Thomas Fisher a/k/a §
Jackson Thomas Smith, and §
Karli Kristian Fisher §
§
VS. § ACTION NO. 4:08-CV-477-Y
§
AIG LIFE INSURANCE COMPANY §

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Pending before the Court is the Motion for Summary Judgment (doc. 27) filed by defendant AIG Life Insurance Company ("AIG"). After review of the parties' submissions regarding the motion and the applicable law, the Court concludes that the motion must be granted.

I.  Facts

Michael Fisher ("the insured") was covered under a group accidental-death insurance policy issued by AIG with a policy limit of $100,000 ("the policy"). The insured designated as beneficiaries of the policy Jackson Thomas Fisher, also known as Jackson Thomas Smith, ("Jackson") and Karli Kristian Fisher ("Karli").

On July 25, 2004, the insured was using a wood chipper at his home when he allegedly leaned too far into the chipper, lost his balance, and hit his nose, causing a large gash that bled profusely. He went inside the house to take a shower, apparently to rinse the blood off and attempt to quell the bleeding. Approximately ten to fifteen minutes later, the insured's wife checked on him. He responded that the bleeding was better, but he still might have to go to the emergency room. About fifteen minutes later, however, she

heard a loud "thud" and found him face down and unconscious in the shower. He was not breathing, and she could not find a pulse. She called emergency personnel, but the insured was not revived.

The July 26, 2004, autopsy report noted that the insured had "[m]ultiple external contusions, abrasions, and superficial lacerations." (AIG's App. at 161.) The report further provided, however, that "[t]he nasal cavities are unremarkable with intact septum." (*Id.* at 163.) The report also noted that the insured suffered from "atherosclerotic cardiovascular disease" with numerous other issues, including an "acute thrombus of [a] vascular bypass graft to [the] right coronary artery." (*Id.* at 161.) The cause of death was listed as follows: "1. Blunt force trauma of face with external hemorrhage due to fall into power equipment (wood chipper); 2. Ischemic heart disease; terminal thrombosis of coronary artery bypass graft." (*Id.* at 162).

The death certificate issued on July 27 by the Tarrant County Medical Examiner ("ME") identified "atherosclerotic cardiovascular disease" as the cause of death, with an underlying cause being "coronary artery graft thrombosis." (*Id.* at 160.) Subsequently, on August 1, 2005, the ME issued an amended death certificate indicating that the immediate cause of death was from a "blunt force trauma of face with external hemorrhage," with the underlying cause being a "fall into power equipment (wood chipper)." (*Id.* at 81.) The amended certificate also listed "ischemic heart disease, terminal thrombosis of coronary artery bypass graft" as another significant

condition contributing to the insured's death but not resulting in the underlying cause of death.   (*Id.*)

Plaintiff Scott Fisher ("Fisher"), as guardian of Jackson and Karli, submitted an initial claim to AIG for the benefits from the policy on October 29, 2004.  On December 7, Seven Hale, AIG's claims examiner, sent a letter acknowledging receipt of the claim and indicating that she was attempting to obtain records relevant to the claim.  On June 3, 2005, Hale sent another letter noting that the death certificate in effect at the time listed disease as the cause of death, whereas the autopsy listed the cause as blunt-force trauma. She further advised that she was seeking additional information from the ME and the physician who performed the autopsy.  She also requested that she be provided with "copies of guardianship papers of the minor beneficiaries' property." (Fisher's App. at 7.)  Hale again wrote to Plaintiff on July 14 and September 28 requesting that copies of guardianship papers for Jackson and Karli be delivered to her.  (*Id.* at 8-9.)  The latter letter also noted that AIG had been notified that only a family member could obtain a copy of the amended death certificate, and thus asked Fisher to provide her with a certified copy of the amended certificate.   On November 8, Hale notified Plaintiff that she had received a copy of the amended death certificate, but still needed "a copy of the guardianship papers of the minor beneficiaries' property in order to release the benefits." (AIG's App. at 142.)  Almost a year later, on October 18, 2006, Hale again wrote to Fisher, stating as follows:

> We will need a copy of guardianship papers of the minor beneficiaries' property in order to release the benefits.

Please provide our office with copies of these documents.
Please note this money is not accruing interest.

(Fisher's App. at 11.)

Apparently unbeknownst to Hale at the time of the October 18 letter, Fisher's counsel in this action, Chandler Grisham, had commenced guardianship proceedings in probate court in September and had been appointed as guardian ad litem for the minor children. (Fisher's App. at 49, ¶¶ 3-5.) Subsequently, Grisham filed a report with the probate court indicating her intent to convince AIG to deposit the funds into the probate court's registry instead of requiring that a formal guardianship be established. (*Id.* at 50.) Grisham avers that she spoke with Hale on March 16. She contends that Hale advised her that the insurance claim had been approved and that Hale had approval from AIG's legal department to deposit the funds with the probate court's clerk, and she asked Grisham to provide her with instructions about how to do so.[1] (*Id.* at 51, ¶ 8.) Grisham sent her the requested information by letter dated March 19 and again notified Hale by letter dated April 5 that she had provided all information requested by Hale. (*Id.* ¶¶ 11-12.)

By letter dated May 2, 2007, Myra Zimmerman, AIG's claims manager, notified Grisham that AIG had decided it needed a medical opinion from an independent forensic pathologist. (AIG's App. at

---

[1]AIG objects to consideration of Grisham's affidavit on the grounds that she is also acting as Fisher's counsel in this case and thus is in violation of the Texas disciplinary rules. AIG cites no authority, however, suggesting that in such a situation, disregarding the lawyer's testimony is the proper remedy, and AIG has not sought Grisham's disqualification. AIG also contends that Grisham's affidavit constitutes hearsay to the extent it relays information told to Grisham by Seven Hale. Inasmuch as Hale was AIG's claims examiner, however, it appears to the Court that the statements at issue do not constitute hearsay. *See* FED. R. CIV. P. 801(d)(2)(C),(D).

130.)  Grisham spoke with Zimmerman on May 3 and was advised that Hale no longer worked for AIG.  (Fisher's App. at 4, ¶ 13.)  On May 17, Dr. Joye M. Carter of J and M Forensic Consultants informed Zimmerman of her conclusion that the insured's death was primarily the result of his atherosclerotic cardiovascular disease.  (AIG's App. at 120.)

On July 11, 2007, almost three years after the claim was filed, AIG notified Fisher that the claim for benefits had been denied. AIG had concluded that because Fisher's death "was caused by or resulted (in whole or in part) from a sickness or disease, no benefits are payable under this policy."  (*Id.* at 116.)  Fisher immediately appealed the decision and requested a copy of all materials reviewed by Dr. Carter.  (*Id.* at 114.)

On September 6, at Fisher's request, Dr. Patrick E. Besant-Matthews submitted a second opinion.  Besant-Matthews concluded that the insured's wood-chipper injury "initiated the blood loss and led in due course to a cardiac event and collapse, followed by death." (*Id.* at 63.)  He explains that the insured

> accidentally sustained injuries, and after a period of time (perhaps 30 minutes) during which his only known complaint was that of bleeding, without known chest pain or other classical heart-related symptoms, got into trouble because of diminished reserves.  It is quite likely that he was taking medication to reduce the risk of forming blood clots, which would also have diminished the ability of his body to stop the bleeding resulting from injury.

(*Id.* at 63.)

On March 24, 2008, AIG requested another medical opinion, this one from Dr. Joseph I. Cohen.  Cohen concluded that the injuries from the wood chipper were not life threatening and were not a substantial

contributing factor to the insured's death.  Rather, Cohen concluded that the insured "died as a result of the mechanism of sudden cardiac arrhythmia due to severe coronary artery disease." (*Id.* at 18.) He disagreed with Besant-Matthews's opinion, noting that "[t]here is insufficient information to implicate blood loss as [a] contributory factor, and there is no data from the autopsy examination to support blood loss as a contributing factor." *(Id.* at 19.) Cohen concluded that the injury "only physiologically contributed" to the insured's death, and "the contribution is probably on the order of several percent, perhaps 5 to 10 percent." (*Id.*) Cohen further opined that the insured "was clearly susceptible to sudden death with or without the addition of the slightest degree of physical or physiologic stress." (*Id.* at 18.)

On March 29, Fisher's claim was referred to AIG's "ERISA Appeal Committee." (*Id.* at 15.)  The committee voted to uphold the denial of benefits on April 16. (*Id.* at 14.)  Fisher thereafter filed this suit alleging four claims: (1) that AIG wrongfully withheld benefits in violation of section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B); (2) that AIG breached its fiduciary duties under ERISA by failing to provide certain information to Fisher within thirty days of a request he made immediately after the claim was denied, in violation of ERISA section 502(a)(1)(A) and 502(c), 29 U.S.C. § 1132(a)(1)(A) and (c); (3) for equitable relief under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), due to AIG's breach of fiduciary duties in administering and processing the claim for benefits; and (4) for equitable estoppel

based on the fact that Hale misrepresented that the claim had been approved, thus causing Fisher to incur costs associated with pursuing the guardianship proceeding and to fail to make timely deposits in the minors' college funds.

## II.  Summary Judgment Standard

Summary judgment is appropriate when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The party moving for summary judgment has the initial burden of demonstrating that it is entitled to a summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When the moving party has carried its summary-judgment burden, the nonmovant must go beyond the pleadings and by its own affidavits or by the depositions, answers to interrogatories, or admissions on file set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e).

In making its determination on the motion, the Court must look at the full record in the case.  FED. R. CIV. P. 56(c); *see Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988).  Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992).  Instead, parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

### III.   Analysis

A.   Denial of Benefits

In reviewing an administrator's decision to deny benefits under an ERISA plan, the standard of review employed varies depending upon whether the ERISA plan vests the administrator with discretion to construe the plan's terms and make eligibility determinations.  If the plan does not vest the administrator with such discretion, *de novo* review of his decision is required.  *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  Conversely, where the plan vests the administrator with such discretion, the administrator's decision will not be overturned unless he has abused that discretion. *Atteberry v. Mem'l-Hermann Healthcare Sys.*, 405 F.3d 344, 347 (5th Cir. 2005); *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 295 (5th Cir. 1999).  In this case, the policy grants to AIG discretionary authority to interpret its terms and make eligibility determinations.[2] Consequently, an abuse-of-discretion standard is appropriate.

Courts generally apply a two-step test when conducting this abuse-of-discretion review.  *See Holland v. Int'l Paper Co. Retirement Plan*, 2009 WL 2050688 n.2 (5th Cir. 2009).  The first step is to determine whether the administrator's decision was legally correct; if it was, there can be no abuse of discretion.  *Id.*  If the administrator's determination was not legally correct, a court must then review whether that interpretation was an abuse of discretion.

---

[2]Specifically, the policy provides as follows:  "Under the terms of its contract, AIG . . . determines whether, and in what amount, a claim is payable." (AIG App. at 214.)

*Id.*  To determine whether an interpretation of the plan is legally correct, a court considers three factors:  "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from the different interpretations of the plan." *Crowell v. Shell Oil Co.*, 541 F.3d 295, 312 (5th Cir. 2008).  "Nonetheless, we are not confined to this [two-step abuse-of-discretion] test; we may skip the first step if we can more readily determine that the decision[, whether legally correct or not,] was not an abuse of discretion." *Holland*, 2009 WL 2050688 at n.2.

In applying the abuse-of-discretion standard, courts analyze whether the plan administrator acted arbitrarily or capriciously. *Meditrust Fin. Servs. Corp. v. Sterling*, 168 F.3d 211, 214 (5th Cir. 1999).  "A decision is arbitrary only if "made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* at 215 (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 828 (5th Cir. 1996)).  The administrator's decision must be supported by substantial evidence. *Id.; see also Vega,* 188 F.3d at 299 ("[T]he administrator's decision [must] be based on evidence, even if disputable, that clearly supports the basis for its denial").  "[R]eview of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness--even if on the low end." *Vega*, 188 F.3d at 297.

The abuse-of-discretion standard is "tempered however, where, as here, a professional insurance company as 'plan administrator both evaluates claims for benefits and pays benefits claims.'" *Estate of Thompson v. Sun Life Assur. Co. of Canada*, 603 F. Supp. 23d 898, 907 (quoting *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2348 (2008)). A party that both insures and administers the plan is self-interested because he "potentially benefits from every denied claim." *Vega*, 188 F.3d at  295. In such a situation, the fact that the administrator is acting under a conflict of interest "must be weighed as a 'factor in determining whether there is an abuse of discretion.'" *Glenn*, 128 S. Ct. at 2348 (quoting *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Holland*, 2009 WL 2050688 at n.3 (explaining abrogation of sliding-scale methodology adopted by court in *Vega* to use when administrator acted under a conflict of interest).

Neither party has submitted any evidence specifically demonstrating whether AIG has given the policy a uniform construction, whether its reading is a reasonable reading of the plan, or whether any unanticipated costs result from the different interpretations of the plan. Instead, both parties argue instead simply that AIG's interpretation either is or is not legally correct.

The policy provides that "if [i]njury to the [i]nsured [p]erson results in death within 365 days of the date of the accident which caused the [i]njury, [AIG] will pay the [p]rincipal [s]um." (AIG's App. at 223.) Injury is defined as "bodily injury caused by an accident occurring while this [p]olicy is in force as to the person

whose injury is the basis of [the] claim and resulting directly and independently of all other causes in loss." (*Id.* at 221.)  The policy also contains certain exclusions, however, one of which provides that "[t]his [p]olicy does not cover any loss caused by or resulting (in whole or in part) from the following: . . . sickness or disease of any kind."  (*Id.* at 224.)

Fisher relies heavily on this Court's decision in *Fowler v. Peoples Benefit Life Insurance Company*, 2007 WL 22290563 (N.D. Tex. 2007).   In *Fowler*, the Court was faced with a motion for summary judgment on a breach-of-contract claim under Texas law.  The claim arose out of the failure of an insurance company to pay benefits on a life-insurance policy.  The policy included a similar, albeit not identical, definition of injury and exclusion.  The Court determined that because there were conflicting opinions from expert witnesses regarding the extent to which the insured's preexisting illnesses caused her loss, summary judgment was inappropriate.

In this ERISA case, however, the Court's standard of review is different.  Instead of simply reviewing the evidence to determine whether there is a genuine issue of material fact, the Court reviews the administrator's decision and the record upon which he relied to ascertain whether the decision is supported by substantial evidence or constitutes an abuse of discretion.  *See Meditrust*, 168 F.3d at 213-216 (affirming grant of summary judgment to administrator where decision was supported by substantial evidence).  After review of the material relied upon by AIG to make its decision, taking into consideration the fact that it was operating under a conflict of

interest, the Court concludes that AIG did not abuse its discretion in deciding to deny the claim for benefits.

The policy specifically provides that it "does not cover any loss caused by or resulting (in whole *or in part*) from . . . sickness or disease of any kind."  (AIG's App. at 224 (emphasis added).)  AIG was presented with substantial evidence, even though disputed by Dr. Besant-Matthews, tending to demonstrate that the insured's heart disease was a proximate cause of his death.  The autopsy concluded that his illness was one of the causes, and the original death certificate listed heart disease as the cause of death.  Although the death certificate was later amended, the insured's illness remained listed as a significant contributing factor.  Drs. Carter and Cohen both concurred; indeed, Dr. Cohen concluded that the accident with the wood chipper likely only minimally contributed to the insured's death.  The Court discerns no abuse of discretion on this record, and AIG is entitled to summary judgment on Fisher's claim for benefits.  *See Young v. Wal-Mart Stores, Inc.*, 293 Fed. Appx. 356, 357 (5th Cir. 2008) (interpreting similar policy provisions; concluding that no abuse of discretion occurred where decision was supported by substantial evidence).

B.  Breach of Fiduciary Duty by Failing to Produce Documents

Fisher's amended complaint also alleges a claim under section 502(a)(1) and (c) of ERISA, 29 U.S.C. § 1132(a)(1), (c), that AIG breached its fiduciary duties by failing to timely provide him with information he requested immediately after the claim was denied. AIG contends that this claim fails because it provided Fisher with

all documents he requested. After review of the parties' submissions, the Court concludes that summary judgment should be granted on this claim. Fisher has failed to present any evidence tending to demonstrate that he requested particular documents that were not timely provided to him.[3]

C.  Breach of Fiduciary Duty in Administering and Processing Claim

Fisher's amended complaint also contends that he is entitled to equitable relief under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), due to AIG's violations of the terms of ERISA in administering and processing the claim for benefits. Specifically, Fisher contends that AIG "breached its fiduciary duty . . . by making the affirmative misrepresentation that the claim was approved, by failing to provide [Fisher] with the requested documents, and by far exceeding any reasonable time frame to process the claim and the subsequent appeal." (Fisher's Am. Compl. at 6, ¶ 14.) Fisher

---

[3]Section 502(c)(1) of ERISA provides as follows:

Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title, section 1021(e)(1) of this title or section 1021(f), or section 1025(a) of this title with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal . . . .

29 U.S.C. §1132(c)(1). Fisher has not alleged or proven facts supporting a violation of ERISA 502(c)(1)(A). Although Fisher's amended complaint alleges that AIG violated ERISA section 502(c), presumably 502(c)(1)(B), by failing to provide him with certain documents within thirty days after his request for same, (Fisher's Am. Compl. at 5, ¶ 13), he has submitted no evidence supporting that contention. Rather, his response brief argues that AIG failed to provide him with adequate notice of his rights under certain ERISA regulations, matters that were not alleged in his amended complaint regarding this claim and that do not support a claim under this provision of ERISA. (Fisher's Resp. Br. at 11-12).

requests as a remedy for this alleged violation that AIG be ordered to pay the claim in full; alternatively, Fisher requests that AIG reimburse him for the costs, including attorney's fees, incurred in pursuing the guardianship proceeding and this litigation.

AIG contends that because Fisher has a viable, even if unsuccessful, claim for benefits, he may not pursue his breach-of-fiduciary-duty claim. In *Varity Corporation v. Howe*, 516 U.S. 489 (1996), the Supreme Court concluded that under certain circumstances an individual could seek equitable relief on his own behalf, rather than solely on behalf of an ERISA plan, under section 502(a)(3) of ERISA. *Id.* at 492. The Court noted, however, that such relief is only available "where Congress [has not] elsewhere provided adequate relief for a beneficiary's injury." *Id.* at 515. As a result of the decision in *Varity*, "[i]t [has become] settled law in this circuit that a potential beneficiary may not sue for breach of fiduciary duty if he has a pending claim under section [502(a)(1)(B), 29 U.S.C. section] 1132(a)(1)(B)[,] for benefits allegedly owed." *Metropolitan Life Ins. v. Palmer*, 238 F. Supp. 2d 826, 830 (E.D. Tex. 2002) (citing cases). Even if the benefits claim is ultimately "unsuccessful, that would not make this alternative claim for equitable relief viable." *Id.* The Court does not countenance AIG's alleged violations of ERISA's and the policy's requirements. Nevertheless, because Fisher had a claim for benefits under ERISA section 502(a)(1)(B), his claim for equitable relief under 502(a)(3)--under which he is solely requesting recovery of the policy's benefits or, alternatively, his out-of-pocket expenses--is unavailing. *See, e.g. Callery v. U.S.*

*Life Ins. Co. of N.Y.*, 392 F.3d 401, 407 (10th Cir. 2004) (noting that the plaintiff would have a right to "appropriate equitable relief" under section 502(a)(3) for the defendant's violations of ERISA's notice requirements and breach of fiduciary duties in the form of "plan compliance with notice requirements in the future or premium returns;" and although those remedies "would not be as attractive as compensatory damages, the limitation of remedy is the product of the statute and we must enforce it"); *Bast v. Prudential Co. of Am.*, 150 F.3d 1003, 1008-09 (9th Cir. 1998) (concluding "out-of-pocket costs" and other money damages are not recoverable under ERISA section 502(a)(3)); *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998) (affirming denial of compensatory damages under ERISA section 502(a)(3); concluding that "[t]he Supreme Court [in *Varity*] clearly limited the applicability of [section 502(a)(3)] to beneficiaries who may not avail themselves of [section 502's] other remedies").

D.  Equitable Estoppel

Fisher lastly claims that he can recover under a theory of equitable estoppel.  The United States Court of Appeals for the Fifth Circuit adopted ERISA estoppel as a cognizable theory in *Mello v. Sara Lee Corporation*, 431 F.3d 440 (5th Cir. 2005).  A plaintiff may succeed under this theory by establishing:  "(1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances."  *Id.* at 444-45. "'[A] misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an

adequately informed decision.'" *Id.* (quoting *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 237 (3d Cir. 1994)).

The Court has no doubt that the alleged misrepresentation by Seven Hale that Fisher's claim for benefits had been approved was material or that Fisher detrimentally relied on the misrepresentation. The problem for Fisher, however, is in proving that his reliance on that misrepresentation was reasonable. "A 'party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party.'" *Id.* at 447 (quoting *Sprague v. GMC*, 133 F.3d 388, 404 (6th Cir. 1998)). Success on Fisher's estoppel claim based upon Hale's oral misrepresentation would effect a change to the policy's clear and unambiguous terms. The policy clearly excludes any loss that results, in whole or in part, from sickness or disease. Permitting Hale's oral approval of an uncovered claim simply is not consistent with ERISA. *See id.*

## IV. Conclusion

For the foregoing reasons, AIG's summary-judgment motion is GRANTED. Fisher's claims are DISMISSED WITH PREJUDICE to their refiling.

SIGNED September 23, 2009.

*Terry R. Means*
_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE